Hillsborough, }
May 5, 1936. }

IDA MAY FROST *v.* HORACE M. STEVENS..

*Willoughby A. Colby* (by brief and orally), for the plaintiff.

*Devine & Tobin* (*Mr. Tobin* orally), for the defendant.

WOODBURY, J. The plaintiff, while walking west on the southerly cross-walk at the intersection of Hanover and Chestnut Streets in Manchester, came into collision with the front of the defendant's automobile which he was driving south on Chestnut Street. Traffic

at that intersection was controlled by a system of automatic electric signal lights which were in operation at the time of the accident. It was raining at that time and the plaintiff, who was over seventy years of age, had her umbrella up.

She testified that before she stepped off the curb into the travelled part of Chestnut Street she stopped until the traffic lights were in her favor. As soon as they were, she looked both north and south along that street and, seeing no cars in either direction, started across. Just before she reached the middle of the street she stopped and again looked in both directions. Still seeing no cars approaching, she proceeded on her way until she was struck, which occurred when she was only a short distance beyond the center of the street. She did not see the defendant's car until the moment of impact.

According to the defendant's version of the accident he first saw the plaintiff when she was standing on the curb preparing to cross Chestnut Street. He was then north of the intersection. Following this, his attention was taken up with other travel at the intersection and with the traffic lights which he said were in his favor. He proceeded into the intersection going ten to twelve miles per hour, and when about half way through it, again saw the plaintiff. At that time she was about one third of the way across Chestnut Street, was "hesitating," and appeared to be confused. The defendant, nevertheless, said he thought the plaintiff saw him and would let him pass in front of her. Thereafter the defendant's attention was again taken up with other traffic and he proceeded on his way at between five and ten miles per hour. When he next saw the plaintiff she was from two to five feet in front of his car. He at once applied his brakes, but could not stop in time to avoid striking her.

I. The plaintiff contends that under the above facts her request for an instruction based upon the doctrine of the last clear chance was improperly denied.

The question raised by the denial of this request is whether or not there is evidence from which the jury could find that the defendant was actually aware of the plaintiff's peril and of her inability to extricate herself from it at a time when due care required and time afforded an opportunity for him to take saving action.

Upon the first occasion when the defendant saw the plaintiff she was on the curb and he was north of the intersection. There was then nothing about the situation to indicate that she was about to put herself into a position of danger, and so the doctrine does not apply. *Olsen* v. *Railroad*, 82 N. H. 120, 124, and cases cited. When the de-

fendant saw the plaintiff just prior to the collision she was two to five feet in front of his car and it was then too late for him to do anything to avoid striking her.

The question arises as to the second time he saw her. It could be found that she was then about one third of the way across the street, was hesitating, and appeared to the defendant to be confused. At that time he was about twenty feet from her and it is conceded that he could have stopped without striking her. The reason which the defendant gave for not stopping at that point is that he thought that the plaintiff saw him and was going to let him pass in front of her. This is a reasonable explanation of his conduct, and, if believed by the jury, would warrant the finding that due care did not require him to stop. On the other hand, there was evidence that the defendant thought she was confused. This would warrant the finding that he knew of her danger, and consequently, would warrant the further finding that due care required him to take such saving action as was then available. Although the doctrine of the last clear chance does not apply unless the one to be charged has actual knowledge of the other's peril, it does not follow that his testimony on that point is conclusive. *Clark* v. *Railroad*, 87 N. H. 36, 39. In the case at bar there are circumstances which offset the defendant's testimony as to his lack of actual knowledge. His testimony that he thought the plaintiff was confused is enough to warrant the finding that he knew of her danger, and if so, then the doctrine of the last clear chance is applicable. It was for the jury to say whether or not he knew of her danger, and the applicability of the doctrine of the last clear chance depends upon the answer to this question of fact. It follows that it was error not to have given the instruction requested.

II. The court instructed the jury to the effect that if they found that the defendant was confronted with an emergency, it was one of the circumstances for them to consider in passing upon the issue of his due care. Admittedly the rule was correctly stated but the plaintiff excepted to it "on the ground, first, that there is no evidence upon which emergency may be found to have existed; and further on the ground that if such emergency was found, there was no instruction that the defendant ought not to take advantage of it, if it resulted from his own previous conduct." This exception is good upon both grounds.

Before instruction on the emergency doctrine is called for there must be some evidence from which the jury could find that the actions of the person confronted with the emergency were affected by the stress of the occasion. That is, there must be something to indicate

either that he chose the wrong course of action, when alternatives were offered, or else that, due to the emergency, he failed to act in the only way open to him as quickly as he would otherwise have done. There is no such evidence in the case before us.

When the defendant saw the plaintiff on the first and second occasions the situation was not so acute as to call for any sudden action on his part. There was then plenty of time to stop. When he saw her the third and last time immediate action was called for, but there is nothing to indicate that immediate action was not then taken or that the action which was taken was not the best if not the only action available. There is nothing to indicate that he could have turned his car in such a way as to have avoided her, or that there was time to have sounded his horn. The evidence indicates that all he could do was to stop, that he did so as quickly as was humanly possible, and that the emergency did not in any way affect his conduct.

Furthermore, the jury were not told that the defendant was not entitled to have the benefit of the emergency rule if the emergency arose from his own want of care. The plaintiff was entitled to have the jury instructed on this point. *Precourt* v. *Driscoll*, 85 N. H. 280. In that case there was a similar omission but it was there held that the charge as a whole was of such a nature that, in spite of the omission, the jury must have understood the situation aright. The charge in the case before us is not susceptible of the same construction as the charge in the *Precourt* case.

III. Exception was also taken to the charge in that the jury were told that breach of the city ordinance respecting traffic lights was negligence which, if causal, would constitute legal fault. The wording is not accurate, but the inaccuracy could not have been detrimental to the plaintiff's cause.

Causal violation of a statute is a legal fault. *Eastman* v. *Herrick*, 87 N. H. 58; *Johnson* v. *Railroad*, 83 N. H. 350, 356, and cases cited. So also is causal violation of the common-law standard of due care. Both are legal faults, but only the latter is negligence. There is no corresponding term for the violation of a statutory standard of conduct. The term legal fault includes both violations, the term negligence does not. It follows that, strictly speaking, the term negligence should be used only to refer to that sort of legal fault which consists of violation of the common-law standard. However, as far as this case is concerned, no harm was done by the misstatement because the consequences of violation of the statute were adequately explained.

The plaintiff's exception to the argument, since the situation is not likely to arise again, does not require consideration.

*New trial.*

ALLEN, C. J., dissented as to the application of the doctrine of last clear chance: the others concurred.